# In the United States Court of Federal Claims

**No. 23-1296C**

**Filed: May 16, 2024**

```
* * * * * * * * * * * * *   *
```

SHELLY V. FRANK,                                  *
                                                  *
       **Plaintiff,**                         *
                                                  *
       **v.**                                *
                                                  *
UNITED STATES,                                    *
                                                  *
       **Defendant.**                        *
                                                  *

```
* * * * * * * * * * * * *   *
```

    **Wojciech Z. Kornacki**, Pentagon Law Office, Washington, D.C., for plaintiff.

    **Daniel D. Falknor**, Trial Attorney, Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for defendant. With him were **Douglas K. Mickle**, Assistant Director, Commercial Litigation Branch; **Patricia M. McCarthy**, Director, Commercial Litigation Branch; and **Brian M. Boynton**, Principal Deputy Assistant Attorney General, Civil Division. **Lieutenant Commander Breier W. Scheetz**, Office of the Judge Advocate General, United States Navy, General Litigation Division, Washington, D.C., of counsel.

## O P I N I O N

<u>**HORN, J.**</u>

    The above captioned case in the United States Court of Federal Claims was filed by Shelly V. Frank, a former Naval officer, who retired on October 31, 2021, at the rank of Commander. Plaintiff's complaint alleges that she was "involuntarily retired" by operation of 10 U.S.C. § 633(a)(1) (2018) which, if not promoted, requires a Naval Commander to "be retired on the first day of the month after the month in which he [or she] completes 28 years of active commissioned service." (alteration added). Plaintiff also alleges that due to the United States Navy's "arbitrary and capricious actions, and delays in violation of Section 624(d)(4) of title 10, Plaintiff was involuntarily retired from active duty" in the Navy. Plaintiff alleges that based on "derogatory information" filed in her official naval records and a "one-sided investigation," she "never had a fair chance to be meaningfully considered for promotion to the rank of Captain that the Navy selected her for." Plaintiff seeks back pay, retroactive promotion, and reinstatement to the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list, as well as correction of her naval records. After plaintiff filed her complaint, plaintiff filed a motion for judgment

on the Administrative Record. Defendant responded by filing a motion to dismiss for failure to state a claim, or, in the alternative, a cross-motion for judgment on the Administrative Record. The parties' motions have been fully briefed and oral argument was held.

## FINDINGS OF FACT

On June 7, 1993, plaintiff enlisted in the United States Naval Reserves. Subsequently, plaintiff served 4 months and 12 days in active service as a service member between October 22, 1993 and March 3, 1994. On March 4, 1994, plaintiff was commissioned as an active-duty officer in the United States Navy. Over the next 20 plus years, plaintiff's records demonstrate that she completed multiple deployments, received multiple awards, and often received high praise from her leadership. In early 2016, the Navy selected plaintiff to the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list and scheduled her to attend the Air War College. Plaintiff was projected to be promoted to the rank of Captain on September 1, 2017. On August 22, 2016, the Navy assigned plaintiff to a Commander billet as the officer in charge of the Cryptologic Services Group European Command (CSG EUCOM).[1]

On September 4, 2016, plaintiff assumed duties as the Chief of CSG EUCOM at the Royal Air Force Base Molesworth in the United Kingdom. Plaintiff's duties as Chief of CSG EUCOM included supervising approximately fifteen military and civilian personnel made up of both Army and Navy service members. Almost immediately upon arrival on the job, plaintiff began experiencing issues with the CSG EUCOM unit's Senior Enlisted Leader (SEL), United States Army Master Sergeant (MSG) Brooks. Plaintiff described MSG Brooks' behavior and leadership style as "highly inappropriate and corrosive." According to plaintiff, MSG Brooks frequently made inappropriate racial, religious, sexual and misogynistic comments, including calling an African American servicemember the "token black" member of the unit. Plaintiff also believed that MSG Brooks was insubordinate and disrespectful. Plaintiff alleges that MSG Brooks ignored standing orders and instructions and, on one occasion, according to plaintiff, "improperly directed CDR [Commander] Frank to enter an unauthorized space at CSG EUCOM without her knowledge – even though he knew that NSA did not finalize CDR Frank's clearances." (capitalization in original; alteration added).

A major dispute between plaintiff and MSG Brooks concerned MSG Brooks' interest in pursuing a second disciplinary action against Cryptologic Technician Collection Chief (CTRC) Thornhill, an African American cryptologic technician from the Navy.[2]

---

[1] The Administrative Record reflects that CSG EUCOM is a joint services command and a "subordinate unit of the National Security Agency [NSA], reporting operationally through NSA/CSS [National Security Agency/Central Security Service] Representative (NCR) EUCOM [European Command], located in Stuttgart, Germany." (capitalization in original; alterations added).

[2] The Administrative Record reflects that plaintiff's predecessor had previously held a Disciplinary Review Board (DRB) for CTRC Thornhill prior to plaintiff's arrival.

Plaintiff alleges that prior to her arrival at CSG EUCOM, her predecessor, Lieutenant Commander (LCDR) Misty Hodgkins directed MSG Brooks "not to hold a second disciplinary review board ('DRB') for CTRC Thornhill." Plaintiff further alleges that MSG Brooks ignored this order and, instead, "used the power vacuum between the departure of then LCDR Hodgkins, and arrival of CDR Frank to proceed with the DRB" of CTRC Thornhill. Plaintiff continues that once she "learned that MSG Brooks ignored then LCDR Misty Hodgkins' orders and made preparations to conduct another DRB for CTRC Thornhill," plaintiff "advised MSG Brooks that she did not want the DRB to be held but had no power to stop him and she had no access to the database to monitor daily activities."

In early September 2016, MSG Brooks proceeded with the DRB for CTRC Thornhill "in CDR Frank's absence." On September 5, 2016, following the DRB, MSG Brooks removed CTRC Thornhill's access to CSG EUCOM. Plaintiff's complaint states that she "notified her higher echelon unit about the senior enlisted leader's behavior but no action was taken." Plaintiff alleges that she also "repeatedly engaged NCR EUCOM to restore CTRC Thornhill's access and he was finally allowed to return to the organization on 4 October 2016." Then, on October 5, 2016, MSG Brooks sent plaintiff an ultimatum email asking plaintiff to "either push the DRB forward [for CTRC Thornhill] for an investigation or relieve me [MSG Brooks] for cause as untrustworthy." (alterations added).

On October 11, 2016, plaintiff emailed her predecessor, LCDR Hodgkins, for "clarity" on her position regarding MSG Brooks' DRB recommendation for CTRC Thornhill. Plaintiff informed LCDR Hodgkins that she had not supported a DRB for CTRC Thornhill and, instead, had intended to mark down CTRC Thornhill's fitness report without holding a DRB. Plaintiff also informed LCDR Hodgkins that she had been "working on" relieving MSG Brooks for cause. LCDR Hodgkins agreed with plaintiff's proposed course of action, writing in response:

> What did MSG Brooks launch another DRB about? I definitely didn't see anything prior to my departure that would have warranted suspended access or another DRB. I agree with the downgrade in marks on FITREP [Fitness Report]. Honestly, MSG Brooks wants to pull Chief's [CTRC Thornhill's] anchors. That is what he has wanted from the beginning. I didn't support that level of action and couldn't/wouldn't advocate for that level of action to NIOC MD [Navy Information Operations Command, Maryland]. It appears as though MSG Brooks took advantage of the vacuum created during our gap to push his original intent forward.

(alterations added).

On October 12, 2016, plaintiff attended a monthly meeting with her operational chain of command, NCR EUCOM, with part of the meeting agenda reading: "MSG Brooks – reassignment possibilities." Following this meeting, on October 14, 2016, plaintiff relieved MSG Brooks for cause. In a memorandum supporting MSG Brooks' relief for cause, plaintiff wrote: "I have lost confidence in your ability to continue functioning as the

Senior Enlisted Leader of this unit due to general disrespect, insubordination, poor judgment, abuse of authority and falsification in the form of misleading authority to satisfy a personal agenda." Describing plaintiff's and MSG Brooks' dispute about pursuing a DRB for CTRC Thornhill, the memorandum stated:

> You [MSG Brooks] convinced Navy Senior Enlisted leaders to conduct a DRB for charges already resolved by the previous Chief[.] It was not the previous Chief's desire to have a DRB for those matters[.] Additionally, you embellished the charges to ensure an outcome favorable to your intentions. For the DRB held on 2 Sep 16, you included a 25 April 16 charge of failure to pay a Hotel Bill. This is misleading. There were extenuating circumstances not included in the report and by including this charge it demonstrates purposeful intention to deceive[.] Additional charges addressed should have been resolved by financial counseling and other punitive measures[.]

(alterations added). The memorandum also stated that MSG Brooks had created a "climate of divisiveness" by removing a draft organization chart that plaintiff prepared for unit realignment, encouraging a Navy Cryptologist Technician to pursue an Army career, and neglecting to invite plaintiff's deputy to a meeting with CSG EUCOM leadership.

On October 17, 2016, plaintiff corresponded via email with her operational chain of command, Cris Crispino (NSA/CSS Representative to EUCOM) and Commander Amy Halin (Deputy NSA/CSS Representative to EUCOM) regarding MSG Brooks' relief for cause. In an email labeled "RE: (U) RELIEF FOR CAUSE ICO MSG BROOKS," (capitalization in original), Commander Amy Halin wrote to plaintiff and Mr. Crispino:

> Are you sure that you want to totally remove MSG Brooks' access? He is already losing face by being removed as the SEL. Cris [Crispino] proposed that perhaps you could keep him in the CSG and focus him on the admin support you have said you need. When you said you were removing him during our monthly, I assumed that he would just be kicked over to the JAC [Joint Analysis Center] and work for them. He isn't due to rotate until Oct 2017, so there would be no fill for that gapped billet until he leaves. I also think the Army SSO [Special Security Officer] at the 66th in Wiesbaden needs to be brought into the conversation.

(alterations added). On the same day, plaintiff sent an email to First Sergeant Daniel Cordell, a representative from MSG Brooks' administrative chain of command at the Army 66th Military Intelligence Brigade in Wiesbaden, which contained attachments supporting MSG Brooks' relief for cause. In response, First Sergeant Cordell stated that he would discuss internally with his Command Sergeant Major (CSM) and get back to her. On October 19, 2016, First Sergeant Cordell responded again, stating:

> I had a long discussion with the Brigade CSM, my Commander will be back from leave tomorrow so I'd like to sit him down also. If there is a spot you

can move him to get him out of your directorate, my CSM thinks that would be best since he's due to PCS [Permanent Change of Station] in a few months anyway. I'll get back with you after I speak with CPT [Captain] Bell on the issues.

(alterations added).

On October 18, 2016, MSG Brooks filed a complaint with the Navy's Inspector General. The complaint alleged that plaintiff had attempted to remove MSG Brooks' clearances and access to the base without an opportunity to defend himself. Describing the plaintiff's and MSG Brooks' earlier disagreement about pursuing a DRB for CRTC Thornhill, MSG Brooks' complaint stated:

The bulk of our disagreements have been in regards to the CPO [Chief Petty Officer] [CTRC Thornhill] and handling of admin matters; all of which I can back up by witness, email and counseling's [sic]. I had several conversations with her with others present about the legality and morality of decisions she [plaintiff] was making that I felt were jeopardizing the morale and welfare of the unit and some of which I felt were plain unethical. The fact that she is protecting a guy with a 9 month counseling record, a page 13,[3] an LOI and a DRB from negative action by an untarnished E8 [MSG Brooks] who is his rightful NCO [Non-Commissioned Officer], even though two of the sailors here have filled out affidavits against him [CTRC Thornhill] but I receive a relief for cause for sending a direct but respectful email over her accusations against me without a counseling or the investigation I was requesting is wrong.

(alterations and footnote added).

On November 29, 2016, the Commander of U.S. Fleet Cyber Command appointed a Command Investigation into allegations that plaintiff had wrongfully relieved MSG Brooks. The scope of this investigation was "limited to the circumstances of her [plaintiff's] decision to relieve MSG Brooks, to include whether she had authority to make said decision, as well as any coordination or consultation she may have had with her chain of command or a legal advisor." (alteration added).

According to a February 10, 2022 decision issued by the Board for Correction of Naval Records (BCNR), in response to a petition filed by plaintiff requesting the BCNR reconsider its earlier June 26, 2019 BCNR decision in which the BCNR had denied

---

[3] A "page 13" refers to NAVPERS 1076/613 which is used to communicate "Administrative Remarks" to Navy personnel. Navy Military Personnel Manual, or MILPERSMAN 1611-020 explains the policy and implantation of a NAVPERS 1076/613. On some occasions, the NAVPERS 1076/613 is used to communicate suspected misconduct or identify deficient performance, requiring the service member to take corrective action.

plaintiff's challenge to her Detached for Cause (DFC)[4] and a May 2017 adverse fitness report, a Command Investigation concluded that plaintiff did not have authority to relieve MSG Brooks and that plaintiff had not coordinated with the proper chains of command.[5] The Command Investigation stated:

> [T]hat Petitioner [plaintiff] was derelict in the performance of her duties as the CSG EUCOM Chief by abusing the authority vested in her and creating a hostile work environment in violation of Article 92, Uniform Code of Military Justice (UCMJ). The most egregious example of such conduct was Petitioner's improper removal of her SEL, which included relieving him from his duties, denying him access to his work area, and attempting to bar him from the installation without authority and/or coordination with either her operational chain of command or the SEL's U.S. Army administrative chain of command. Petitioner reportedly took these actions despite being specifically counseled that she lacked the authority to do so unilaterally and that proper coordination with National Security Agency and Service elements would be required.

(capitalization in original; alterations added). The information included in the Administrative Record and the February 10, 2022 BCNR decision reflected that plaintiff's lack of authority to remove MSG Brooks appears, at least in part, to derive from the October 2016 emails in which plaintiff discussed MSG Brooks' removal with her chain of command and MSG Brooks' chain of command. On October 16, 2016, plaintiff's chain of command wrote that "the Army SSO at the 66th in Wiesbaden needs to be brought into the conversation" about removing MSG Brooks. Between October 17 and 18, 2016, a

---

[4] MILPERSMAN, 1611-020 (2007) provides the military's policies and procedures for "Officer Detachment for Cause" or DFC. Specifically, MILPERSMAN 1611-020 ¶ 3 identifies "[m]isconduct," "[s]ubstandard performance involving one or more significant events resulting from gross negligence or complete disregard of duty," and "[l]oss of confidence in an officer in command" as reasons for requesting a detachment for cause. (alterations added). MILPERSMAN 1611-020 ¶ 4 provides the procedural steps required before initiating a DFC request. MILPERSMAN 1611-020(1)(a) explains that "Detachment for Cause, or DFC, is the administrative removal of an officer, whether on active duty or in the Selected Reserve, from the officer's current duty assignment before their normal transfer or planned rotation date." MILPERSMAN 1611-020(1)(a). As noted by MILPERSMAN 1611-020(1)(b), "DFC is one of the strongest administrative measures used in the case of officers" and "has a serious effect on the officer's future naval career, particularly with regard to promotion, duty assignment, selection for schools, and special assignment." MILPERSMAN 1611-020(1)(b). When a Naval officer is detached for cause, it does not necessarily mean that the officer will be separated from the Navy, however, the officer may have to "show cause for retention in the Naval Service." MILPERSMAN 1611-020(10)(a)(2).

[5] The parties did not include the Command Investigation in the Administrative Record filed in this court. The quoted statements regarding the Command Investigation are taken from the February 10, 2022 BCNR decision.

representative from MSG Brooks' chain of command twice informed plaintiff that he would "get back with" her regarding MSG Brooks' removal as the SEL. Regardless, plaintiff concedes in her complaint filed in this court that she "had no disciplinary or command authority and had to coordinate all disciplinary and command actions with her higher echelon unit and each member's corresponding unit."

The February 10, 2022 BCNR decision also stated that the Command Investigation found that plaintiff "created a hostile work environment by losing her temper, raising her voice, and generally displaying an aggressive demeanor." Additionally, the February 10, 2022 BCNR decision stated that the Command Investigation "revealed several instances of substandard performance by Petitioner 'due to gross negligence or complete disregard of duty.'" Specifically, the February 10, 2022 BCNR decision stated that the Command Investigation found that plaintiff was "grossly negligent in failing to coordinate" MSG Brooks' removal with both her and MSG Brooks' chains of command.

On February 17, 2017, plaintiff was terminated from her position as Chief of CSG EUCOM due to "loss of confidence in her ability to effectively perform her duties in that position." On February 22, 2017, the Commander, Navy Personnel Command, delayed plaintiff's promotion to Captain. On February 23, 2017, the Commander, United States Fleet Cyber Command/Tenth Fleet requested that plaintiff receive a DFC. The request identified "three separate bases" as support for the DFC: "misconduct, substandard performance of duty involving significant events, and my loss of confidence in CDR Frank's ability to serve as Chief of CSG EUCOM Molesworth." The request cited the "most egregious example" of misconduct being plaintiff's removal of MSG Brooks without authority. The request also recommended that plaintiff be removed from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list.

In early March 2017, plaintiff "received a non-punitive letter of censure stating that she was derelict in her duties as the CSG EUCOM Chief by exercising poor judgment." On March 8, 2017, plaintiff provided an official response to the request that she receive a DFC. With respect to the removal of MSG Brooks, plaintiff tried to defend her decision, but conceded that she "would have made clear that I [plaintiff] was transferring not relieving for cause because it appears to me this lack of clarity prompted the investigation into whether I had non-judicial punishment (NJP) authorities as opposed to just the right to remove a disruptive member from my unit." (alteration added). Plaintiff's response, however, stated that she had consulted with both her operational and administrative chains of command prior to her decision to remove MSG Brooks, citing oral conversations, the October 12, 2016 meeting agenda, and email correspondence occurring between October 17, 2016 and October 19, 2016.

On March 21, 2017, plaintiff submitted a complaint to the Inspector General concerning her "improper Detachment for Cause" and her removal from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list. The Inspector General initially rejected plaintiff's complaint and, after a reconsideration request, concluded in response to the reconsideration request, that plaintiff's claims "either did not

warrant further investigation or were not substantiated." In May 2017, plaintiff also received an adverse fitness report.

On June 22, 2017, the Deputy Chief of Naval Personnel approved plaintiff's DFC, and on June 29, 2017, plaintiff was transferred to a new assignment. Nearly two years later, on June 12, 2019, the Secretary of the Navy approved plaintiff's removal from "the FY-17 Active-Duty Navy Captain Line (Information Warfare) promotion list." On June 18, 2019, Commander, Navy Personnel Command notified plaintiff that she had been removed from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list. A memorandum appended to the letter referenced plaintiff's prior DFC stated:

> Commander, Navy Personnel Command (CNPC) delayed CDR Frank's promotion based on National Security Agency (NSA) inspector general complaints and a related command investigation into allegations that CDR Frank abused her authority while serving as Chief of Cryptologic Services Group (CSG) U.S. European Command (EUCOM) at Royal Air Force Molesworth, United Kingdom.

(capitalization in original).

After her DFC and removal from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list, plaintiff continued to serve in the Navy under other assignments until her retirement. On February 9, 2021, plaintiff submitted a retirement request through the Navy Standard Integrated Personnel System (NSIPS). A screenshot of plaintiff's NSIPS retirement request reveals that plaintiff requested an effective retirement date of November 1, 2021 and that plaintiff was "approved for voluntary retirement on 211101 with an SPD [Separation Program Designator] Code of RBD [Sufficient Service for Retirement]." (alterations added). Plaintiff's NSIPS retirement request also states that plaintiff's "Mandatory Retirement/Separation Date" would have been April 1, 2022. On October 31, 2021, plaintiff retired from the Navy, prior to her "Mandatory Retirement/Separation Date."

Three personnel documents, filed in plaintiff's official naval records and submitted to the court, are especially relevant to plaintiff's retirement history and plaintiff's allegation that she was involuntarily retired from the Navy. The first document is plaintiff's "Statement of Service" form, dated October 27, 1997, which details plaintiff's service, as of October 27, 1997. Plaintiff's "Statement of Service" form indicates that she served 4 months and 12 days as a service member between October 22, 1993 and March 3, 1994. The "Statement of Service" form labels these 4 months and 12 days as "USNR—E," or United States Naval Reserves – Enlisted. The "Statement of Service" form also indicates that plaintiff had served 3 years, 7 months, and 24 days between being commissioned on March 4, 1994 and the date of the report, October 27, 1997.

The second document is plaintiff's Department of Defense (DD) Form 214 "Certificate of Release or Discharge From Active Duty" which details plaintiff's service

dates at the time of her retirement. Box 12c of plaintiff's DD Form 214 indicates that plaintiff had served 27 years, 7 months, and 27 days of "Net Active Services This Period." Box 12d of her DD Form 214 indicates that plaintiff also served 4 months and 12 days of "Total Prior Active Service" at the time of her retirement. Plaintiff's DD Form 214 indicates the "narrative reason for separation" as "Maximum Service Or Time In Grade" and her separation code as "SBC."

The third document is a screenshot from plaintiff's NSIPS retirement request, dated February 9, 2021, included as part of defendant's submissions to the court. Plaintiff's NSIPS retirement request indicates that plaintiff was "approved for voluntary retirement on 211101 with an SPD Code of RBD." Plaintiff's NSIPS retirement request also states that plaintiff's "Mandatory Retirement/Separation Date" would have been April 1, 2022. Plaintiff however, retired prior to that date.[6]

In 2018, after plaintiff was detached for cause from CSG EUCOM and transferred to a new assignment, plaintiff petitioned the BCNR for relief. Plaintiff requested that the BCNR remove the DFC from her service record, keep her name on the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list, and remove the adverse fitness report from her record. On June 14, 2018, the Bureau of Naval Personnel Office of Legal Counsel provided an advisory opinion to the BCNR, which stated:

> The Applicant [plaintiff] claims the DFC violated MILPERSMAN 1611-020, but says the absence of any underlying disciplinary action violated MILPERSMAN. In fact, MILPERSMAN 1611-020, para 3a says that "only in unusual circumstances will a DFC by reason of misconduct be approved without disciplinary action . . . ." However, C10F [Commander United States Tenth Fleet] described in his recommendation that he considered NJP [non-judicial punishment], but thought it more appropriate to only DFC the Applicant. In addition, CNPC [Commander, Navy Personnel Command] considered all aspects of the request and approved the DFC. The Applicant also claimed that she could not be DFC'd for substandard performance as removing a command member is discretionary and cannot be gross negligence. However, this ignores the findings of failure to coordinate with the various chains of command combined with HHQ [Higher Headquarters] directives to not remove the member. The Applicant is correct that loss of

---

[6] Plaintiff does not contest that plaintiff's NSIPS retirement request is in plaintiff's official navel records. The parties disagree as to the impact of the form on plaintiff's claims and as to the impact of possible errors on the form, discussed below. As an official government record, the court will review it as part of its consideration of this case. The NSIPS screenshot indicates that plaintiff submitted a voluntary NSIPS retirement request on February 9, 2021, prior to reaching her mandatory 28 year, absent promotion, retirement date of April 1, 2022. The fact that plaintiff submitted this NSIPS retirement request over a year prior to her statutory retirement date is relevant to addressing plaintiff's claim because it is inconsistent with plaintiff's allegations that she "was involuntarily retired from the U.S. Navy" by operation of 10 U.S.C. § 633, which requires Naval Commanders to retire upon serving 28 years of "active commissioned service," if not promoted.

> confidence in an officer in command could not be a basis for a DFC, as she
> was chief of a section, not a commanding officer.

(capitalization and omission in original; alterations added). With respect to the October 17, 2016 and October 19, 2016 emails plaintiff sent to MSG Brooks' chain of command, the advisory opinion indicated that they "do not document coordination with the US Army regarding reassignment of the E-7 [MSG Brooks], but merely preliminary comments and statements that the Army would get back to her." (alteration added). The advisory opinion concluded that "sufficient evidence existed to DFC" the plaintiff for misconduct and substandard performance. The advisory opinion did not address whether the BCNR should keep plaintiff on the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list.

On June 26, 2019, the BCNR denied plaintiff's requested relief, finding that the "evidence submitted was insufficient to establish the existence of probable material error or injustice." The June 26, 2019 BCNR decision largely adopted the Office of Legal Counsel's advisory opinion findings, and concluded:

> With regard to your request to remove the DFC, the Board substantially
> concurred with the AO [Advisory Opinion] and concluded that the
> documents were filed in accordance with Navy policy and that their removal
> is not warranted. With regard to your request to remove the FITREP for the
> reporting period 26 July 2016 to 30 April 2017, the Board substantially
> concurred with the PERS-32 [Navy Personnel Command-32] AO and
> concluded that the FITREP is valid, administratively correct, and
> procedurally correct, as well as removal of the report is not warranted. With
> regard to your request to keep your name on the O-6 promotion selection
> list, the BOARD noted that the delay of your promotion for the FY17 O-6
> selection board is still ongoing, and that your name has thus not been
> removed. Accordingly, your request is not ripe.

(capitalization in original; alterations added). Therefore, the June 26, 2019 BCNR decision denied plaintiff's application to correct her records. Separate from the BCNR proceedings, the Secretary of the Navy approved removal of plaintiff's name from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list.

On January 11, 2021, plaintiff again petitioned the BCNR to correct her naval records and to re-consider its previous decision. In this petition, plaintiff requested the following relief:

> (1) [R]estore CDR Frank to the AD CAPT permanent promotion list and
> correct her date of rank, (2) remove the wrongful detachment for cause
> ('DFC') dated 22 June 2017 from her records because it is based on
> incorrect and unsubstantiated allegations and it violates MILPERSMAN
> 1611-20 [sic], (3) correct her fitness report, period of report 26 July 2016 to
> 30 April 2017 because it violates BUPERSINST [Bureau of Naval Personnel

Instructions] 1610.10, (4) correct all other records and documents accordingly, and (5) consider written letters from CAPT Pratt and Col Walzer refuting the claims against her[.]

(capitalization in original; alterations added). Plaintiff also argued that her removal from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list was improper because it was based on an investigation that was "legally deficient, not supported by evidence and contrary to law." Plaintiff argued, in part:

First – as explained below – the investigation makes capricious and arbitrary findings that are contrary to law that there was no coordination – when the irrefutable evidence shows otherwise. Second – the investigation fails to identify any legal standards that CDR Frank allegedly violated. Third – additional evidence shows that CDR Frank would have been derelict in the performance of her duties if she did not coordinate with NCR EUCOM for the reassignment of MSG Brooks who repeatedly targeted protected racial and gender minority groups and undermined command authority within CSG EUCOM.

(capitalization in original). Plaintiff's second BCNR petition also stated that plaintiff had "alerted NCR EUCOM about the pervasiveness of" MSG Brooks' "bullying but NCR EUCOM was slow to react and advised that it was mostly unaware of it – as if NCR EUCOM's ignorance of the problem negated the allegations." In addition, plaintiff argued that her removal from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list was improper because it was "excessively delayed" in violation of Secretary of the Navy Instruction (SECNAVINST) 1420.

On February 10, 2022, the BCNR found "insufficient evidence of any material error or injustice warranting relief" and affirmed its previous decision. With respect to plaintiff's contention that the Command Investigation was arbitrary and contrary to substantial evidence, the February 10, 2022 BCNR decision found:

In the absence of evidence to the contrary, the Board relies upon the presumption of regularity to establish that naval officials properly performed their functions. In this case, there was no reason to believe that the CI [Command Investigation] IO [Investigative Officer] failed to conduct a thorough and partial investigation, impartially weighed the conflicting evidence and witness credibility, and reached his conclusions in an impartial manner. Petitioner certainly has not provided any evidence to suggest that the IO had a preexisting bias which would taint his conclusions in this regard. The Board acknowledges that Petitioner provided evidence contrary to the CI findings, but this evidence appears to be outweighed by the mass of evidence against her. The Board has no reason to doubt that the CI IO impartially weighed the evidence for and against Petitioner, to include weighing Petitioner's credibility against that of her multiple accusers.

11

(capitalization in original; alterations added).[7]

In response to plaintiff's contention that the evidence she provided "irrefutably" demonstrated coordination with the proper chains of command prior to relieving MSG Brooks, the February 10, 2022 BCNR decision found:

> The e-mails that she provided that purportedly reflects [sic] her coordination of this decision were dated after the action had been taken and do not reflect prior approval of this decision. Rather, they reflect her efforts to obtain approval (after the fact), and that she took action before such approval was received. The e-mail traffic with the 66th Military Intelligence Brigade (i.e., the SEL's administrative command) reflected that Petitioner discussed the reasons that she desired to relieve her SEL with a non-commissioned officer (NCO) who clearly did not have the authority to approve the relief of her SEL, and that this NCO clearly informed Petitioner that he needed to discuss the matter with his superiors further. It very obviously did not say what Petitioner claimed it to say. Likewise, the e-mails provided with Petitioner's operational chain reflected only that Petitioner had discussed her desire to remove her SEL, but not that the decision had been approved. In fact, Petitioner's operational chain clearly and unequivocally informed Petitioner that the relief for cause memorandum that [sic] her SEL's administrative chain of command would need to be brought into the conversation before her SEL was removed. That clearly did not happen.

(capitalization in original; alterations added). The February 10, 2022 BCNR decision continued:

> An officer of Petitioner's experience should know that "coordination" in a matter such as this does not consist only of preliminary discussions without approval. Common sense dictates that an officer without command authority in a joint organization cannot unilaterally relieve a service member from a position to which they were assigned by the other service without first coordinating that decision with the member's command authority. Contrary to Petitioner's contention, that clearly did not happen here, and Petitioner was derelict in purporting to relieve her SEL without such coordination.

Addressing the plaintiff's contention that the Command Investigation failed to state any law or regulation violated by plaintiff, the February 10, 2022 BCNR decision found:

---

[7] The court notes that the February 10, 2022 BCNR decision mentions relying on the "presumption of regularity" in response to plaintiff's claims that the Command Investigation was arbitrary and capricious. Although the February 10, 2022 BCNR decision acknowledges that plaintiff tried to provide some evidence contrary to the Command Investigation findings, it is not clear what evidence plaintiff submitted to the BCNR or to what evidence the BCNR is referring in its the February 10, 2022 BCNR decision.

Dereliction of duty is a violation of Article 92, UCMJ, and the evidence reflects that she was derelict in her duties as the CSG EUCOM Chief. Petitioner had a duty to exercise good judgment, leadership, and temperament expected of a senior officer in this position, and she failed to do so. She had a duty to make proper coordination with both the operational command and her SEL's administrative command before relieving him from his Army-assigned position, but she failed to do so. She also had a duty to foster a positive work environment in CSG EUCOM, but as evidenced by the overwhelming evidence of the CI she failed to do so. There was more than sufficient evidence to find that Petitioner was derelict in her duties as the CSG EUCOM Chief in violating Article 92, UCMJ, which certainly constitutes misconduct sufficient to justify her DFC.

(capitalization in original).

With respect to plaintiff's contention that the Command Investigation was defective for failure to identify an applicable legal standard for relieving a SEL, the February 10, 2022 BCNR decision found that "no such 'legal standard' is likely to exist," but that "common sense dictates that an individual without command authority, like Petitioner [plaintiff], does not have authority to relieve a service member of the duties assigned to that member by parent service without the approval of that parent service." (alteration added). The February 10, 2022 BCNR decision concluded that the Command Investigation's finding that plaintiff was derelict for "fail[ing] to exercise the judgment required of a senior officer in her role" was supported by the evidence. (alteration added).

Next, the February 10, 2022 BCNR decision addressed plaintiff's contention that she would have been derelict if she had not relieved MSG Brooks for cause. The February 10, 2022 BCNR decision conceded that the relationship between plaintiff and MSG Brooks may have been "challenging" and that MSG Brooks "may have been insubordinate and acted contrary to her wishes." The February 10, 2022 BCNR decision noted, however, that the issue was with how plaintiff went about relieving MSG; not whether relieving MSG Brooks was merited, and, therefore, the BCNR "found no error in the CI's finding that she [plaintiff] failed to properly coordinate" MSG Brooks' removal. (alteration added).

The February 10, 2022 BCNR decision also responded to several of plaintiff's other contentions, including that her detachment for cause violated MILPERSMAN 1611-020, finding:

First, as discussed above, the CI upon which the DFC was based found clear evidence of misconduct upon which the DFC could be based. Paragraph 3a of reference (c) [MILPERSMAN 1611-020] states that "[a]ny act of misconduct, civil or military, may form the basis for a DFC request." Petitioner's substantiated dereliction of duty in violation of Article 92, UCMJ, satisfied this requirement. Further, Petitioner's contention that her DFC

violated reference (c) [MILPERSMAN 1611-020] because the command failed to take disciplinary action against her was false because she received a non-punitive letter of censure for her conduct prior to initiation of the DFC process. The Board also noted that the DFC request commented that Petitioner's DFC was necessitated by the circumstances of her status as a senior officer who had been removed from her position by the operational chain of command located in a remote location without reassignment options.

(capitalization in original; first and third alterations added).

Next, in response to plaintiff's contention that there was no basis for her detachment for cause for substandard performance, the February 10, 2022 BCNR decision found:

Whether Petitioner's negligence arose to this level [gross negligence] is a judgment call, and the Board finds no error in the conclusion that an officer with Petitioner's experience demonstrated "gross negligence" in the conduct in question. Petitioner's contention that her demonstrated excellent performance in her role as the CSG EUCOM Chief disproved the finding that she demonstrated "substandard performance of duty" is also without merit. Applying the definition from SECNAVINST [Secretary of the Navy Instruction] 1920.6 by analogy, "substandard performance of duty" is defined as the "[i]nability of an officer to maintain adequate levels of performance or conduct" as evidenced by one or more of a specified list of examples which include the "[f]ailure to demonstrate acceptable qualities of leadership required of an officer in the member's grade" and "[f]ailure to properly discharge duties expected of officers of the member's grade and experience." Petitioner's substantiated conduct certainly met this criteria.

(capitalization in original; first two alterations).

The February 10, 2022 BCNR decision, however, conceded that "loss of confidence" should not have been included as a basis for plaintiff's DFC, but that the inclusion of this basis was a harmless error. The February 10, 2022 BCNR decision found:

[T]he Board agrees with Petitioner's contention that "loss of confidence" should not have been included as basis for the DFC since Petitioner was not in a command billet, but does not believe that this mistake warrants relief. This was but one of the three bases cited in support of the request and the other two bases provided more than sufficient bases to support the request, so the inclusion of this basis in the DFC request was clearly a harmless error.

(capitalization in original; alteration added). Additionally, the February 10, 2022 BCNR decision found that there was no error or injustice in plaintiff's adverse FITREP because

there was no "material error or injustice in either the DFC or the CI upon which it was based." (capitalization in original).

Finally, the February 10, 2022 BCNR decision addressed plaintiff's contention that her name should be restored to the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list, stating:

> [T]he Board found no error in the underlying investigation upon which Petitioner's ultimate removal from the promotion list was based. Further, Petitioner has been afforded the opportunity to rebut the findings of the CI at every step of the process, so she was afforded all due process in this decision. The Board acknowledged that Petitioner's promotion was delayed beyond the six months authorized by reference (b) [10 U.S.C. § 624 (2018)], but notes that reference (b) [10 U.S.C. § 624] permits the SECNAV [Secretary of the Navy] to specify a further period of delay. Considering it was the SECNAV who ultimately determined that Petitioner should be removed from the promotion list, the approval of this further period of delay can be reasonably implied. The Board also acknowledges that Petitioner's promotion was delayed beyond the 18 months authorized by reference (b) [sic] [SECNAVINST 1420.3], but determined that the remedy for an excessive promotion delay is not the automatic promotion of an officer deemed otherwise not qualified for the delayed promotion.

(capitalization in original; alterations added).[8] The February 10, 2022 BCNR decision continued:

---

[8] The February 10, 2022 BCNR decision noted that plaintiff's promotion was delayed beyond the "six months" authorized by 10 U.S.C. § 624 and the "18 months" authorized by SECNAVINST 1420.3 (2019). The statute at 10 U.S.C. § 624 addresses promotion delays arising from adverse information or an investigation into the officer. See 10 U.S.C. § 624(d)(1). In the case of a promotion delayed under 10 U.S.C. § 624(d)(1), an officer's promotion "may not be delayed under this subsection for more than six months after the date on which the officer would otherwise have been appointed unless the Secretary concerned specifies a further period of delay." 10 U.S.C. § 624(d)(5). SECNAVINST 1420.3 provides

> an officer's promotion may not be delayed more than the later of: 90 calendar days after final action has been taken in any criminal case against the officer in a Federal or State court; 90 calendar days after final action has been taken in any court-martial against the officer; or, 18 months after the date on which the officer would otherwise have been appointed.

SECNAVINST 1420.3. The court notes that the 90 period is not applicable to plaintiff's case as there was no criminal case pending against plaintiff and there was no court-martial pending against plaintiff.

The Board determined that the delay in resolving Petitioner's promotion status did not cause Petitioner any harm. Rather, it ensured that the SECNAV decision to remove Petitioner from the promotion list was properly informed by all the relevant facts. Accordingly, the Board finds no material error or injustice in this delay.

In conclusion, the February 10, 2022 BCNR decision "recommend[ed] no corrective action be taken on Petitioner's naval record." (alteration added).

On August 10, 2023, plaintiff filed the above captioned case in the United States Court of Federal Claims. Plaintiff's complaint asserts four claims. In Count One, plaintiff claims that the Navy violated the Military Pay Act, 37 U.S.C. § 204 (2018).[9] Plaintiff alleges that defendant "improperly detached Plaintiff for cause based on an investigation that arbitrarily downplayed Plaintiff's level of coordination with her higher echelon unit and the senior enlisted leader's unit, and alleged additional misconduct against Plaintiff." Plaintiff further alleges that "Defendant generated derogatory records in Plaintiff's official military personnel file that prevented her from being fairly considered for promotion to the rank of Captain." Plaintiff concluded Count One by stating that "because of Defendant's arbitrary and capricious actions, and delays in violation of Section 624(d)(4) of title 10, Plaintiff was involuntarily retired from active duty." In Count Two, plaintiff alleges that the Navy violated MILPERSMAN 1611-020 because defendant "capriciously detached her for cause, failed to consider her evidence showing real-time coordination for the removal of the senior enlisted leader, and arbitrarily removed her from the promotion list by generating derogatory records, Plaintiff's rights were violated and she is entitled to relief." In Count Three, plaintiff claims that BCNR "acted arbitrarily and capriciously" and "improperly ignored Plaintiff's evidence" in its decision not to correct plaintiff's naval records. Finally, in Count Four, plaintiff claims that the Navy acted "capriciously and arbitrarily in" detaching her for cause.

After plaintiff's complaint was filed, the court held a hearing with the parties and set a briefing schedule. After defendant filed the Administrative Record, plaintiff filed a motion for judgment on the Administrative Record. Plaintiff argues first that the Navy committed procedural and substantive violations of MILPERSMAN 1611-020. Plaintiff asserts that she "was detached without any prior counselings or letters of instruction and

---

[9] The statute at 37 U.S.C. § 204(a) states:

(a)  The following persons are entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service computed under section 205 of this title – (1) a member of a uniformed service who is on active duty; and (2) a member of a uniformed service, or a member of the National Guard who is not a Reserve of the Army or the Air Force, who is participating in full-time training, training duty with pay, or other full-time duty, provided by law, including participation in exercises or the performance of duty under" various sections of title 32.

37 U.S.C. § 204(a).

without documenting all reasons for the detachment," in violation of MILPERSMAN 1611-020 procedures. Plaintiff further asserts that the Navy failed to support her detachment with an appropriate investigation or documentation as required by MILPERSMAN 1611-020. In addition, plaintiff argues that the Navy failed to "document all bases" for her detachment for cause. Plaintiff continues that her detachment for clause violated MILPERSMAN 1611-020 by erroneously accusing her of substandard performance and erroneously detaching her for loss of confidence. Second, plaintiff argues that the Navy violated 10 U.S.C. § 624(d)(4), DODI (Department of Defense Instruction) 1320.04 and SECNAVINST 1420.3 when removing her from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list. Plaintiff asserts that her removal from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list was improper because it was based on a flawed investigation that failed to identify any legal standard. Plaintiff also asserts that her removal from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list violated 10 U.S.C. § 624(d)(4) and SECNAVINST 1420.3 because it lasted over eighteen months. Third, plaintiff argues that the BCNR acted arbitrarily when it rejected her petitions for relief. Plaintiff asserts that the BCNR "arbitrarily downplayed" her level of coordination with the proper chains of command for the removal of MSG Brooks. Additionally, plaintiff asserts that the BCNR acted arbitrarily when applying "should know" and "common sense" standards in finding that plaintiff failed to coordinate with the proper chains of command. Plaintiff concludes by alleging that the Administrative Record "reveals that the detachment for cause violated MILPERSMAN 1611-020 procedures and that the BCNR acted arbitrarily and capriciously in its decisions and they should be set aside."

In response, defendant filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) (2023) of the Rules of the United States Court of Federal Claims (RCFC), or, in the alternative, a cross-motion for judgment on the Administrative Record. In its motion to dismiss, defendant first argues that this court should dismiss the complaint for failure to state a claim because plaintiff "voluntarily retired from the Navy, thereby barring any challenges to her discharge or requests for back pay under 37 U.S.C. § 204." Defendant points out that 10 U.S.C. § 633(a) requires Naval Commanders to retire upon completing 28 years of "active commissioned service." Defendant alleges, however, that plaintiff "had not reached 28 years of active service as a commissioned officer on the date of her retirement" and, instead, "voluntarily retired before her statutory retirement date" after she initiated a retirement request by filing a form through the NSIPS on February 9, 2021, over a year prior to her statutory retirement date. As noted above, defendant attached to the motion to dismiss a screenshot of plaintiff's NSIPS retirement request which identifies plaintiff's mandatory retirement date if she were to have completed 28 years of service, as April 1, 2022.

Defendant next argues that plaintiff "failed to state a claim for a retroactive promotion because she has not alleged sufficient facts to allow the Court to draw a reasonable inference that she is entitled to a retroactive appointment to Captain or any increased pay that would follow from such a retroactive promotion." Defendant also argues that "because no monetary relief can be awarded to CDR (Ret) Frank, the Court cannot order the various forms of nonmonetary relief requested." Defendant suggests

that, even if plaintiff has stated a plausible claim for monetary relief, "her challenges to the substantive decisions of her command – for example, the command's decision to remove CDR (Ret) Frank from her assignment because she engaged in misconduct or her performance was substandard – are beyond the scope of this Court's review" and should be dismissed as "non-justiciable." (citations omitted).

Alternatively, the defendant's motion requests this court to "grant judgment in favor of the United States on the basis of the administrative record because the board's decision is supported by substantial evidence." Defendant's motion states that "even if CDR (Ret) Frank's complaint adequately pleads facts to state a claim under 37 U.S.C. § 204, and even if the complaint raises a justiciable controversy, the Court should grant judgment in favor of the United States because the board's decision was not arbitrary or capricious."

In her response to defendant's motion to dismiss, plaintiff argues that the defendant's motion to dismiss should be denied because "[p]laintiff's complaint shows that she has identified sufficient facts and information concerning the wrongful detachment, improper promotion delays, mandatory retirement, and arbitrary and capricious actions of the BCNR." (alteration added). In response to defendant's contention that plaintiff voluntarily retired from the Navy because she had not yet reached the statutorily required 28 years of active commissioned service, plaintiff argues:

> Plaintiff's DD Form 214 reveals that she was separated under SECNAVINST 1920.6C, *ADMINISTRATIVE SEPARATION OF OFFICERS*. The Navy listed the narrative reason for separation as 'Maximum Service Or Time in Grade'. Section 12c of her certificate of release or discharge from active duty states that she had net active service of 27 years, 7 months and 27 days. However, her total prior active service also includes additional 4 months and 12 days. Member data summary indicates that her pay entry basic date was October 22, 1993. Thus in total, Plaintiff has over 28 years of service as indicated on her DD Form 214. Plaintiff's first day of retirement was November 1, 2021. ('THE EFFECTIVE DATE OF RETIREMENT IS 01NOV2021') Because Plaintiff's DD Form 214 indicates that her retirement was mandatory, Defendant's arguments to the contrary should be rejected in this case.

(capitalization and emphasis in original; citations omitted).

Plaintiff continues that, in the alternative, "[t]o the extent that Defendant directed Plaintiff to mandatorily retire in October 2021, but she could have served until April 2022 or later had the Navy deferred it if Plaintiff's records had been corrected – this would also suggest that her retirement was involuntary." (alteration added). Plaintiff also argues that the BCNR capriciously and arbitrarily denied relief by "fail[ing] to identify any legal standards that Plaintiff purportedly violated," instead relying on what plaintiff "should have known." (alteration added). Plaintiff also argues that the BCNR violated MILPERSMAN 1611-020 by "conced[ing]" that her detachment for cause based on loss of confidence

was erroneous because plaintiff was never in command but claiming that this was a harmless error because the other grounds for detachment were sufficient.

In its reply to the motion to dismiss, defendant repeats that plaintiff's complaint should be dismissed for a failure to state a claim under RCFC 12(b)(6). In sum, in support of its RCFC 12(b)(6) motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, defendant argues that plaintiff voluntarily retired from the Navy, thereby barring any recovery under the Military Pay Act, 37 U.S.C. § 204. Moreover, according to defendant, even if plaintiff was involuntarily retired from the Navy, she is not entitled to a retroactive promotion or increased pay. In its reply in support of the government's position, defendant also tries to submit a declaration from Mr. Adolphus Yarbro, the Branch Head for the Officer Retirements Branch (PERS-835) at Navy Personnel Command.[10] Defendant also argues that the Navy decisions to detach plaintiff for cause and remove plaintiff from a leadership position and from the promotions list are non-justiciable.

## D I S C U S S I O N

The Military Pay Act entitles members of the armed services to "the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service . . . ." 37 U.S.C. § 204(a) (omission added). It is well established that the Military Pay Act, 37 U.S.C. § 204(a), is a "money-mandating" statute. See Metz v. United States, 466 F.3d 991, 998 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006); see also Smith v. Sec'y of Army, 384 F.3d at 1294; Dysart v. United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004); Antonellis v. United States, 723 F.3d 1328, 1333 (Fed. Cir. 2013); Lewis v. United States,

---

[10] Because the court's decision is that plaintiff has failed to state a claim because of her voluntary retirement, the court does not find it necessary to rely on Mr. Yarbro's declaration to decide the defendant's motion to dismiss for failure to state a claim. Mr. Yarbro's declaration tries to explain mistakes in the plaintiff's personnel files, including that the retirement code and narrative reason for separation listed on plaintiff's DD Form 214, indicating that plaintiff retired because of "Maximum Service or Time in Grade," resulted from a mistake in plaintiff's official retirement orders. The declaration states that "[s]tatutory retirement reports are produced approximately 12 months prior to a servicemember's statutory retirement date" and, given plaintiff's statutory retirement date of April 1, 2022, "[a]t the time the draft statutory retirement orders were created for CDR Frank, she had a pending voluntary retirement request within the Navy Standard Integrated Personnel System (NSIPS), but that request had not yet been routed to PERS-835 [Officer Retirement Branch at Navy Personnel Command]." (alterations added). The declaration continues that "[a]fter PERS-835 became aware of CDR Frank's voluntary retirement request, CDR Frank's draft statutory retirement orders were edited to reflect CDR Frank's voluntary retirement request for the retirement date of November 1, 2021." (alteration added). Mr. Yarbro's declaration concludes that the mistakes in plaintiff's DD Form 214 were the result of mistakes in "[t]he editing process to turn draft statutory retirement orders into voluntary retirement orders [which] entails changing the retirement date, the Separation Program Designator (SPD) code, and the cited applicable statute for retirement." (alterations added).

458 F.3d 1372, 1376 (Fed. Cir. 2006), cert. denied 552 U.S. 810 (2007); Roth v. United States, 378 F.3d 1371, 1384 (Fed. Cir.), reh'g denied (Fed. Cir. 2004); Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003), cert. denied, 540 U.S. 1177 (2004); Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997); Singleton v. United States, 54 Fed. Cl. 689, 691 (2002).

As discussed above, defendant filed a motion to dismiss plaintiff's complaint for failure to state a claim pursuant to RCFC 12(b)(6). Pursuant to RCFC 12(b)(6), when examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2023); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56, 570 (first alteration added; footnote and other citations omitted; omissions in original); see also Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–57, 570); Bd. of Supervisors of Issaquena Cnty., Mississippi v. United States, 84 F.4th 1359, 1364 (Fed. Cir. 2023); McCutchen v. United States, 14 F.4th 1355, 1362-63 (Fed. Cir. 2021), cert. denied, 143 S. Ct. 422 (2022); Boaz Hous. Auth. v. United States, 994 F.3d at 1364; Sharifi v. United States, 987 F.3d 1063, 1067 (Fed. Cir.), cert. denied, 142 S. Ct. 107 (2021); Oliva v. United States, 961 F.3d 1359, 1362 (Fed. Cir. 2020); First Mortg. Corp. v. United States, 961 F.3d 1331, 1339 (Fed. Cir. 2020); Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019); Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir.

2016); Kam-Almaz v. United States, 682 F.3d 1364, 1367-68 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354-55 (Fed. Cir.), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)) (alteration added); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)), reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); Bennett v. United States, 169 Fed. Cl. 486, 493 (2024); Rancho Vista Del Mar v. United States, 169 Fed. Cl. 299, 302 (2024); Radziewicz v. United States, 167 Fed. Cl. 62, 66 (2023); Pope v. United States, 162 Fed. Cl. 556, 576 (2022); Reid v. United States, 159 Fed. Cl. 619, 626 (2022); Kuntz v. United States, 141 Fed. Cl. 713, 716 (2019); Christen v. United States, 133 Fed. Cl. 226, 229 (2017); Christian v. United States, 131 Fed. Cl. 134, 144 (2017).

When deciding a case based on a failure to state a claim, the court must accept as true the factual allegations in the complaint. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. at 508 n.1))); Scheuer v. Rhodes, 416 U.S. at 236 ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); Fishermen's Finest, Inc. v. United States, 59 F.4th 1269, 1274 (Fed. Cir. 2023); Am. Bankers Ass'n v. United States, 932 F.3d at 1380 ("In reviewing a motion to dismiss, we accept as true the complaint's well-pled factual allegations; however, we are not required to accept the asserted legal conclusions." (citing Ashcroft v. Iqbal, 556 U.S. at 678)); Harris v. United States, 868 F.3d 1376, 1379 (Fed. Cir. 2017) (citing Call Henry, Inc. v. United States, 855 F.3d 1348, 1354 (Fed. Cir. 2017)); Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) ("When reviewing a motion to dismiss for lack of subject matter jurisdiction, a court accepts only uncontroverted factual allegations as true for purposes of the motion."); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

The Administrative Record filed in the case currently before the court demonstrates that plaintiff enlisted in the United States Naval Reserves on June 7, 1993 and began service on October 22, 1993. Plaintiff's "Statement of Service" form indicates that before plaintiff was commissioned as a Naval officer on March 4, 1994, plaintiff served 4 months and 12 days as a service member between October 22, 1993 and March 3, 1994. In 2016, plaintiff was selected to the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list and, on September 4, 2016, plaintiff assumed duties as the Chief of CSG EUCOM in a Commander billet. After being investigated for removing CSG EUCOM's SEL for cause, plaintiff was terminated from her position as Chief of CSG EUCOM and subsequently received a DFC. In 2018, plaintiff petitioned the BCNR to remove the DFC from her naval records, but the BCNR denied relief in a June 26, 2019 decision. On June 12, 2019, the Navy removed plaintiff from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list. After the BCNR initially denied plaintiff's first petition and after plaintiff was removed from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list, plaintiff again petitioned the BCNR to correct her naval records, and to reinstate her to the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list. On February 10, 2022, the BCNR again denied plaintiff's requested relief.

On February 9, 2021, over a year prior to reaching her 28 years statutory retirement date of April 1, 2022, plaintiff submitted a retirement request through the NSIPS, requesting an effective retirement date of November 1, 2021. On October 31, 2021, plaintiff retired from the Navy. After her retirement from the Navy, plaintiff filed this action in the United States Court of Federal Claims, seeking back pay, a retroactive promotion to Captain, and correction of her naval records.

A plaintiff, such as plaintiff, who is no longer on active duty must show an involuntary separation from the military to state a claim under the Military Pay Act, 37 U.S.C. § 204. See Metz v. United States, 466 F.3d at 998. In Metz, the United States Court of Appeals for the Federal Circuit stated:

> [T]he issue of the voluntariness of a plaintiff's separation, a necessary requirement for a separated-plaintiff's case to fit within the scope of 37 U.S.C. § 204 [the Military Pay Act], is properly addressed under a Rule 12(b)(6) motion to dismiss and therefore is no longer a jurisdictional requirement appropriately challenged under Rule 12(b)(1). Therefore, if a plaintiff cannot establish that he is currently on active duty, he must assert and ultimately establish that his separation was involuntary in order to fit within the scope of, and take advantage of, the money-mandating status of § 204, or else his claim falls for failure to state a claim upon which relief can be granted.

Metz v. United States, 466 F.3d at 998 (alterations added). Therefore, a plaintiff seeking back pay under the Miliary Pay Act, 37 U.S.C. § 204, must establish that his or her separation from the military was involuntary. See Smith v. Sec'y of Army, 384 F.3d at

1295 ("If the service member's separation from the service is voluntary, such as pursuant to a voluntary retirement, the Military Pay Act does not impose on the government any continuing obligation to pay the service member."); Faerber v. United States, 156 Fed. Cl. 715, 727 (2021) ("Military Pay Act claims require that a plaintiff's discharge or retirement from military service be involuntary.") (citing Metz v. United States, 466 F.3d at 998); Peterson v. United States, 104 Fed. Cl. 196, 204-05 (2012) ("In order to maintain a claim for back pay under section 204, a plaintiff's separation from the military must have been involuntary.") (citing Metz v. United States, 466 F.3d at 998); Lopez-Velazquez v. United States, 85 Fed. Cl. 114, 136 (2008) ("To state a claim for which relief can be granted in a case seeking back pay pursuant to 37 U.S.C. § 204 (2000), a plaintiff's separation from the military must have been involuntary.") (citing Metz v. United States, 466 F.3d at 998) (footnote omitted); Murphy v. United States, 69 Fed. Cl. 593, 611 (2006), aff'd, 223 F. App'x 966 (Fed. Cir. 2007) (finding that plaintiff "fail[ed] to establish that her resignation was involuntary.") (alteration added).

This court applies a general presumption of voluntariness in cases in which a military servicemember tenders his or her resignation or retires. See Carmichael v. United States, 298 F.3d 1367, 1372 (Fed. Cir. 2002) ("A presumption of voluntariness generally exists where an employee tenders his [or her] resignation or retires . . . .") (alteration and omission added) (citing Tippett v. United States, 185 Fed. 1250, 1255 (Fed. Cir. 1999), abrogated on other grounds by Metz v. United States, 466 F.3d at 991; see also Metz v. United States, 466 F.3d at 998; Moyer v. United States, 190 F.3d 1314, 1320 (Fed. Cir. 1999); Christie v. United States, 207 Ct. Cl. 333, 338 (1975) ("Employee resignations are presumed to be voluntary. This presumption will prevail unless plaintiff comes forward with sufficient evidence to establish that the resignation was involuntarily extracted."); Faerber v. United States, 156 Fed. Cl. at 727 ("Courts generally presume a resignation or retirement to be voluntary."); Banks v. United States, 119 Fed. Cl. 254, 257 (2014); Peterson v. United States, 104 Fed. Cl. at 205 ("It is well-established that the court must presume that plaintiff's separation was voluntary."); House v. United States, 99 Fed. Cl. 342, 347 (2011) ("Where a member of the military resigns or retires, his [or her] decision is presumed to be voluntary.") (alteration added), aff'd, 473 F. App'x 901 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2012). Therefore, a plaintiff no longer on active duty must overcome the general presumption of a voluntary separation and establish an involuntary separation to defeat a motion to dismiss to for failure to state a claim. See Metz v. United States, 466 F.3d at 999-1000.

Plaintiff cites to 10 U.S.C. § 633 to try and support her allegations of an involuntary separation, which provides, in part:

[E]ach officer of the Regular Navy who holds the regular grade of commander, who is not on a list of officers recommended for promotion to the regular grade of colonel or captain, respectively, shall, if not earlier retired, be retired on the first day of the month after the month in which he completes 28 years of active commissioned service.

10 U.S.C. § 633(a)(1) (alteration and emphasis added).

Although plaintiff contests the circumstances of her DFC, removal from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list, and the results of the two BCNR decisions in her case, she appears not to contest her statutory retirement date, absent promotion, of April 1, 2022. Defendant argues that plaintiff did not reach 28 years of "active commissioned service" at the time of her retirement. As noted above, the Administrative Record demonstrates that plaintiff enlisted in the Navy Reserves on June 7, 1993, began service on October 22, 1993, but was commissioned as a Naval officer on March 4, 1994, and retired from the Navy on October 31, 2021. Accordingly, defendant argues that plaintiff served only 27 years, 7 months, and 27 days of "active commissioned service" at the time of her retirement. These 27 years, 7 months, and 27 days correspond with the time plaintiff served as a commissioned Naval officer; between the date she was commissioned on March 4, 1994, and the date she retired, on October 31, 2021, and does not include the time she served between October 22, 1993, and March 3, 1994. Plaintiff argues, however, that her naval records demonstrate that she served a total of over 28 years of "active commissioned service." Plaintiff acknowledges on her DD Form 214 "Certificate of Release or Discharge From Active Duty" that her service dates includes Box 12c which indicates that plaintiff served 27 years, 7 months, and 27 days of "Net Active Services This Period" at the time of her retirement. Plaintiff tries to point to her earlier service identified in Box 12d of her DD Form 214, which indicates that plaintiff served 4 months and 12 days of "Total Prior Active Service." Additionally, at oral argument, the parties agreed that these additional 4 months and 12 days of "Total Prior Active Service" refer to plaintiff's service between October 22, 1993, and March 3, 1994, i.e., one day before she became an active commissioned officer in the Navy on March 4, 1994. Plaintiff's "Statement of Service" form supports this understanding as it labels these same 4 months and 12 days as "USNR—E" or United States Naval Reserves – Enlisted. In her complaint, plaintiff, nonetheless, maintains that because of the time she served as an service member and the time she served as a commissioned officer, she reached 28 years of "active commissioned service."

To understand whether plaintiff meets the burden of establishing an involuntary retirement, the court considers whether her time served between October 22, 1993, and March 3, 1994, ending one day before March 4, 1994, when she entered active commissioned service, and before she became a commissioned officer, counts as "active commissioned service." See 10 U.S.C. § 633(a)(1) ("[E]ach officer of the Regular Navy who holds the regular grade of commander, who is not on a list of officers recommended for promotion to the regular grade of colonel or captain, respectively, shall, if not earlier retired, be retired on the first day of the month after the month in which he [or she] completes 28 years of active commissioned service." (alterations added)). The statute at 10 U.S.C. § 633 does not expressly define what constitutes "active commissioned service." SECNAVINST 1920.6C characterizes this kind of retirement as involuntary. See SECNAVINST 1920.6C ("Regular O5s, if not earlier retired, shall, if not on a promotion list to O6, be involuntarily retired on the 1st day of the month after the month in which they complete 28 years of active commissioned service.") (emphasis added). The Navy instruction at SECNAVINST 1920.6D (2019), however, specifically defines "active commissioned service" as "service on active duty as a commissioned officer."

SECNAVINST 1920.6D. Only a plaintiff separated from the Navy under 10 U.S.C. § 633(a)(1), upon fully completing 28 years of service on active duty as a commissioned officer, satisfies the burden of establishing that his or her retirement was involuntary. The distinction between "active service" and "active commissioned service" in 10 U.S.C § 633(a)(1) also can be compared to 10 U.S.C. § 8323(a)(1) (2018), which states: "An officer of the Navy or the Marine Corps who applies for retirement after completing more than 20 years of active service, of which at least 10 years was service as a commissioned officer, may, in the discretion of the President, be retired on the first day of any month designated by the President." (emphasis added).

In a statutory interpretation analysis, "[t]he first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) (alteration added) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997); see also Jimenez v. Quarterman, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."). "When tasked with interpreting a statute, we start by exhausting all traditional tools of interpretation to determine its meaning. The starting point is the text itself." Obsidian Sols. Grp., LLC v. United States, 54 F.4th 1371, 1374 (Fed. Cir. 2022) (citing United States v. Hohri, 482 U.S. 64, 69 (1987); see also LaBonte v. United States, 43 F.4th 1357, 1367–68 (Fed. Cir. 2022) ("We begin our analysis, as we must, with the pertinent statutory language.") (citing Food Mktg. Inst. v. Argus Leader Media, 139 S. Ct. 2356, 2364 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself."); Nicely v. United States, 23 F.4th 1364, 1368 (Fed. Cir. 2022) ("When interpreting a statute, we 'begin with the language employed by Congress.'" (quoting Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist., 541 U.S. 246, 252 (2004)))).

The initial inquiry into the statutory text ceases "'if the statutory language is unambiguous and "the statutory scheme is coherent and consistent."'" Barnhart v. Sigmon Coal Co., 534 U.S. at 450 (quoting Robinson v. Shell Oil Co., 519 U.S. at 340 (quoting United States v. Ron Pair Enters., Inc., 489 U.S. at 240); see also King v. Burwell, 576 U.S. at 486 ("If the statutory language is plain, we must enforce it according to its terms.") (citing Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251 (2010)); Sucic v. Wilkie, 921 F.3d 1095, 1098 (Fed. Cir. 2019) (quoting Barnhart v. Sigmon Coal Co., 534 U.S. at 450); Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d at 644; Arko Foods Int'l, Inc. v. United States, 654 F.3d 1361, 1364 (Fed. Cir. 2011) ("'[W]here Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute.'" (alteration in original) (quoting Millenium Lumber Distrib. Ltd. v. United States, 558 F.3d 1326, 1328 (Fed. Cir.), reh'g denied (Fed. Cir. 2009)); Am. Airlines, Inc. v. United States, 551 F.3d 1294, 1300 (Fed. Cir. 2008). Thus, when the "'statute's language is plain, "the sole function of the courts is to enforce it according to its terms[.]"'" Johnson v. United States, 529 U.S. 694, 723 (2000) (Scalia, J., dissenting) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. at 241 (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917))); see also Jimenez v. Quarterman, 555 U.S. at 118; Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000));

Bartels Tr. for the Benefit of Cornell Univ. ex rel. Bartels v. United States, 617 F.3d 1357, 1361 (Fed. Cir.) (citing Sharp v. United States, 580 F.3d 1234, 1237 (Fed. Cir. 2009)), reh'g en banc denied (Fed. Cir. 2010); Candle Corp. of Am. v. United States Int'l Trade Comm'n, 374 F.3d 1087, 1093 (Fed. Cir.), reh'g and reh'g denied (Fed. Cir. 2004).

When interpreting the plain meaning of the statute, it is the court's duty, if possible, to give meaning to every clause and word of the statute. See Setser v. United States, 566 U.S. 231, 239 (2012) ("Our decision today follows the interpretive rule they invoke, that we must 'give effect . . . to every clause and word' of the Act." (omission in original) (quoting United States v. Menasche, 348 U.S. 528, 538–39 (1955))); see also Alaska Dep't of Env't Conservation v. EPA, 540 U.S. 461, 489 n.13 (2004) ("It is, moreover, 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (internal quotations omitted))); Williams v. Taylor, 529 U.S. 362, 404 (2000) (describing as a "cardinal principle of statutory construction" the rule that every clause and word of a statute must be given effect if possible; Wolfe v. McDonough, 28 F.4th at 1354–55 ("The presumption against surplusage additionally provides that a 'statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'") (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004) (citing 2A Norman J. Singer, Statutes and Statutory Construction § 46.06, at 181-86 (rev. 6th ed. 2000))); Boeing Co. v. Sec'y of the Air Force, 983 F.3d 1321, 1327 (Fed. Cir. 2020) (quoting Shea v. United States, 976 F.3d 1292, 1300 (Fed. Cir. 2020) ("[I]t is a 'cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute[.]'" (first alteration in original) (quoting Williams v. Taylor, 529 U.S. at 364))); Sharp v. United States, 580 F.3d at 1238. Similarly, the court must avoid an interpretation of a clause or word which renders other provisions of the statute inconsistent, meaningless, or superfluous. See Duncan v. Walker, 533 U.S. 167, 174 (2001) (noting that courts should not treat statutory terms as "surplusage"). The Federal Circuit has stated that "[w]e do not look at the text in a vacuum, but rather, we must consider the words 'in their context and with a view to their place in the overall statutory scheme.'" Obsidian Sols. Grp., LLC v. United States, 54 F.4th at 1374 (quoting King v. Burwell, 576 U.S. at 486) (alteration added). The Supreme Court has recognized that "[o]ne of the most basic interpretative canons" is the canon against surplusage. Corley v. United States, 556 U.S. 303, 314 (2009) (alteration added). The canon against surplusage instructs that "statutes should be read to avoid superfluity." Marx v. Gen. Revenue Corp., 568 U.S. 371, 392 (2013) (Sotomayor, J., dissenting). This canon "is strongest when an interpretation would render superfluous another part of the same statutory scheme." Marx v. Gen. Revenue Corp., 568 U.S. 371 at 386.

Accepting plaintiff's argument that her service between October 22, 1993, and March 3, 1994, should count as "active commissioned service," however, would render the term "commissioned" as used in the various statutes, especially 10 U.S.C. § 633(a)(1), superfluous. The statutory scheme demonstrates that Congress deliberately has distinguished between active commissioned service and total active service. The choice to use the term "commissioned officer" and "active commissioned service" in 10 U.S.C

§ 633(a)(1), drives the conclusion that "active commissioned service" includes only the time a Naval officer serves after he or she is commissioned as a Naval officer. Therefore, the statute at issue in plaintiff's case, 10 U.S.C. § 633(a)(1), should be understood as "active commissioned service" includes only time served as a commissioned Naval officer.

To the extent that the limited case law on the subject of mandatory retirement under 10 U.S.C. § 633 is available, "active commissioned service" only includes time served as a commissioned officer. In Prochazka v. United States, 104 Fed. Cl. 774 (2012), a Judge of this court calculated a Navy officer's "active commissioned service" from the date on which he was commissioned, rather than from the date on which he originally enlisted in the Navy. See id. at 799. Nonetheless, plaintiff cites to Prochazka as support for her argument that her retirement was involuntary. At oral argument, plaintiff's counsel tried to argue broadly that the Prochazka case demonstrates that the Navy and the BCNR have maintained inaccurate personnel records and calculated inaccurate service dates in the past. Prochazka, however, dealt with a case of trying to determine a Naval officer's service dates across two different statutory regimes: service creditable prior to the enactment of the Defense Officer Personnel Management Act (DOPMA) in 1981, and service creditable after the enactment of DOPMA. See Prochazka v. United States, 104 Fed. Cl. 774, 778-83 (2012). Prochazka stands for the proposition that "a Navy officer's mandatory retirement date [should be] computed by adding pre-DOPMA 'total commissioned service' to post-DOPMA 'active commissioned service.'" Prochazka v. United States, 104 Fed. Cl. at 781 (alteration added). Plaintiff's service in the case currently before the court, however, was entirely under the post-DOPMA statutory regime and plaintiff does not argue otherwise. With respect to plaintiff's claim, Prochazka makes clear that a Naval officer's mandatory retirement date should be computed from the date that the officer was "initially appointed" as an officer in the Navy, rather than from the date the officer enter the service as a reservist in the Navy. See Prochazka v. United States, 104 Fed. Cl. at 799.

Therefore, for purposes of calculating "active commissioned service" under 10 U.S.C. § 633(a)(1), the period between October 22, 1993, and March 3, 1994, that plaintiff served does not count towards the determination of "active commissioned service." Furthermore, both parties agree that the same 4 months and 12 days of "Total Prior Active Service" identified on plaintiff's DD Form 214 does not refer to her commissioned service and does not count as "active commissioned service" for purposes of plaintiff's mandatory retirement calculation. Plaintiff served only 27 years, 7 months, and 27 days of "active commissioned service" at the time of her retirement. As a result, plaintiff did not reach, at the time of her voluntary retirement, the 28 years of "active commissioned service" required in order to render her retirement involuntary under 10 U.S.C. § 663(a)(1).

The February 9, 2021 NSIPS retirement request plaintiff submitted supports the court's finding that plaintiff not reach 28 years of "active commissioned service" at the time of her retirement. MILPERSMAN 1810-020 describes the process by which commissioned Naval officers submit a "voluntary active duty retirement request" through the "Navy Standard Integrated Personnel System Retirements and Separations."

MILPERSMAN 1810-020, ¶ 1(a) (Nov. 21, 2018). MILPERSMAN 1810-020 instructs that "[f]or officers with mandatory/statutory retirement due to failure of selection for promotion, maximum years of service, selective early retirement or age, a request is not needed or desired unless an earlier retirement date is desired." (emphasis added). For Naval officers facing mandatory retirement due to maximum years of service, "retirement orders are initiated by NAVPERSCOM (PERS-835) within NSIPS RnS." Id. Despite MILPERSMAN 1810-020's instructions to the contrary, on February 9, 2021, plaintiff submitted her NSIPS retirement request, requesting an effective retirement date of November 1, 2021, although plaintiff's NSIPS request identified her statutory retirement date as April 1, 2022, the date which is consistent with a calculation of 28 years served following when plaintiff was commissioned on March 4, 1994.[11]

Furthermore, plaintiff's NSIPS retirement request characterizes her retirement as "voluntary," stating that plaintiff is "approved for voluntary retirement on 211101 [Nov. 1, 2021] with an SPD [Suspension/Separation Program Designator] code of RBD [Sufficient Service for Retirement]." (alterations added). Moreover, "Sufficient Service for Retirement" is distinct from retiring due to a statutory retirement date, which is mandatory. Plaintiff fails to successfully explain why she submitted a voluntary retirement request more than a year prior to her statutory retirement date. In this case, plaintiff's NSIPS retirement request supports this court's finding that plaintiff did not reach the statutorily required 28 years of "active commissioned service" in her case at the time of her retirement given that the computation should not include plaintiff's noncommissioned service.

In her reply, plaintiff states that "[t]o the extent that Defendant directed Plaintiff to mandatorily retire in October 2021, but she could have served until April 2022 or later had the Navy deferred it if Plaintiff's records had been corrected – this would also suggest that her retirement was involuntary as well." (alteration added). If plaintiff is trying to suggest that her otherwise voluntary retirement was obtained through coercion or duress, rather than a miscalculation by her as to the number of creditable years she had served

---

[11] As noted on the NSIPS retirement request, "Retirement date is on or before Statutory Date: 3/5/2022, or is not greater than the first day of the month following the month in which the service member reaches their Statutory date. Requested date is before Mandatory Retirement/Separation Date: 4/1/2022." This is also consistent with 10 U.S.C. § 633(a)(1), which, as quoted above, provides

> each officer of the Regular Navy who holds the regular grade of commander, who is not on a list of officers recommended for promotion to the regular grade of colonel or captain, respectively, shall, if not earlier retired, be retired on the first day of the month after the month in which he [or she] completes 28 years of active commissioned service.

10 U.S.C. § 633(a)(1) (alteration added). April 1, 2022, is the first day of the month following the month in which plaintiff reached her mandatory retirement date, completing 28 year of active commissioned service, absent promotion, following her commission as a Naval officer on March 4, 1994.

toward mandatory retirement, plaintiff must show that: "(1) [s]he involuntarily accepted the terms of the government; (2) circumstances permitted no other alternative; and (3) said circumstances were the result of the government's coercive acts." Carmichael v. United States, 298 F.3d 1367, 1372 (Fed. Cir. 2002) (alteration added). As indicated above, "[a] presumption of voluntariness generally exists where an employee tenders his [or her] resignation or retires; the plaintiff bears the burden of coming forward with evidence to demonstrate that his [or her] resignation or retirement was not voluntary." Id. (alterations added). see also Christie v. United States, 207 Ct. Cl. at 338; Faerber v. United States, 156 Fed. Cl. at 727; Peterson v. United States, 104 Fed. Cl. at 205; House v. United States, 99 Fed. Cl. at 349. "The presumption of a voluntary resignation survives, however, even if the plaintiff is confronted with 'a choice of unpleasant alternatives.'" Joslyn v. United States, 90 Fed. Cl. 161, 182 (2009), aff'd in part, vacated in part, 420 F. App'x 974 (Fed. Cir. 2011) (quoting Sammt v. United States, 780 F.2d 31, 33 (Fed. Cir. 1985)). In her complaint, plaintiff does not allege any facts plausibly suggesting that she was directed to retire prior to her statutory retirement date. Nor does plaintiff's complaint allege that she was directed to submit the NSIPS retirement request. In fact, plaintiff's complaint makes no mention of her NSIPS retirement request at all. Therefore, plaintiff has failed to overcome the "presumption of voluntariness [that] generally exists where an employee tenders his resignation or retires." Therefore, plaintiff has failed to carry the burden of establishing that her retirement was involuntary. See Carmichael v. United States, 298 F.3d at 1372; Metz v. United States, 466 F.3d at 999-1000.

When determining whether plaintiff reached 28 years of "active commissioned service" the court acknowledges it identified certain inconsistences in plaintiff's personnel documents. For example, plaintiff's DD Form 214 identifies plaintiff's separation code as "SBC" which appears to stand for maximum service or time in grade. Yet, plaintiff's NSIPS retirement request identifies plaintiff's separation code as "RBD" or "Sufficient Service for Retirement," a very different calculation. Regardless, however, Box 12D of plaintiff's DD Form 214 identifies 4 months and 12 days of "Total Prior Active Service," which both parties agree refers to the time plaintiff had served as a non-commissioned servicemember between October 22, 1993, and March 3, 1994, ending the day before March 4, 1994, when plaintiff became a commissioned officer. As described above, plaintiff's "Statement of Service" form lists these 4 months and 12 days as "USNR—E," or United States Naval Reserves – Enlisted. At oral argument, the Navy could not explain the discrepancy. Unfortunately, plaintiff's voluntary NSIPS retirement request was not included in the Administrative Record until it was included in defendant's motion for judgment on the Administrative Record. At oral argument, however, plaintiff's counsel stated that counsel did not ask the Navy for plaintiff's February 9, 2021 NSIPS retirement request prior to its appearance in the Administrative Record. Also, discussed above, although the BCNR did review the Command Investigation findings and refer to and summarize the Command Investigation findings in the February 10, 2022 BCNR decision, the Command Investigation itself was not.

In sum, in order to state a claim upon which relief can be granted under the Military Pay Act, 37 U.S.C. § 204, a plaintiff no longer on active duty must show an involuntary separation. Although plaintiff alleges that she was "involuntarily retired" by operation of

10 U.S.C. § 633(a)(1), which requires a Naval Commander [in plaintiff's situation] to "be retired on the first day of the month after the month in which he [or she] completes 28 years of active commissioned service," (alterations added), and despite certain inconsistencies in plaintiff's personnel records, plaintiff's service time as a commissioned officer had not reached 28 years of "active commissioned service" at the time of her retirement. Instead, plaintiff submitted a request to retire before that date, on October 31, 2021. Plaintiff does not allege any facts plausibly suggesting that her retirement was otherwise rendered involuntary, even assuming that all of the factual allegations asserted in plaintiff's complaint are true. Accordingly, this court grants the defendant's RCFC 12(b)(6) motion to dismiss for failure to state a claim.

Plaintiff also claims that her promotion to Captain was improperly delayed in violation of the statute at 10 U.S.C. § 624 and SECNAVINST 1420.3, which, as previously discussed, negatively view promotion delays exceeding, depending on circumstances, at 6 months and 18 months, respectively. The BCNR acknowledged that plaintiff's promotion was delayed beyond the time authorized by the statute at 10 U.S.C. § 624, and the BCNR also acknowledged that plaintiff's promotion was delayed beyond the time authorized by SECNAVINST 1420.3.

Defendant argues, however, that the statute permits the Secretary of the Navy to extend the time and further argues that the BCNR "reasoned that the Secretary implicitly approved a delay because the Secretary 'ultimately determined that [CDR (Ret) Frank] should be removed from the promotion list,'" (alteration in original), albeit later than anticipated by 10 U.S.C. § 624 and SECNAVINST 1420.3. Defendant also argues that a promotion delay cannot result in an automatic promotion to Captain, given that senior "military officers must be appointed pursuant to the constitutional process, which requires appointments at the discretion of the President, not automatic appointments pursuant to statute" and "[t]he statute does not and cannot alter that process by providing for automatic appointment." See Dysart v. United States, 369 F.3d 1303, 1311, 1315 (Fed. Cir. 2004) (alteration added); see also 10 U.S.C. § 624(c) ("Appointments under this section shall be made by the President, by and with the advice and consent of the Senate[.]") (alteration added). The February 10, 2022 BCNR decision found that plaintiff's promotion delay allowed the Secretary of the Navy to make an informed decision to remove plaintiff from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list upon completion of the Command Investigation.

In plaintiff's case, as described above, on February 17, 2017, plaintiff was terminated from her position as Chief of CSG EUCOM, and five days later, on February 22, 2017, the Commander, Navy Personnel Command, delayed plaintiff's promotion to Captain. The following day, on February 23, 2017, the Commander for the United States Fleet Cyber Command/Tenth Fleet requested that plaintiff receive a DFC and also recommended that plaintiff be removed from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list. In response, on March 21, 2017, plaintiff submitted a complaint to the Inspector General regarding the DFC and the removal from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list. The Inspector General initially rejected plaintiff's complaint and, after a reconsideration request,

concluded in response to the reconsideration request, that plaintiff's claims "either did not warrant further investigation or were not substantiated." On June 22, 2017, the Deputy Chief of Naval Personnel approved plaintiff's DFC. Subsequently, on June 12, 2019, the Secretary of the Navy approved plaintiff's removal from "the FY-17 Active-Duty Navy Captain Line (Information Warfare) promotion list." On June 18, 2019, the Commander, Navy Personnel Command notified plaintiff that she had been removed from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list. A memorandum appended to the letter referenced plaintiff's prior DFC stated:

> Commander, Navy Personnel Command (CNPC) delayed CDR Frank's promotion based on National Security Agency (NSA) inspector general complaints and a related command investigation into allegations that CDR Frank abused her authority while serving as Chief of Cryptologic Services Group (CSG) U.S. European Command (EUCOM) at Royal Air Force Molesworth, United Kingdom.

(capitalization in original). As plaintiff submitted a complaint to the Inspector General, and subsequently submitted a reconsideration request to the Inspector General, it was reasonable, and not arbitrary or capricious, for the Secretary of the Navy to delay making a decision on plaintiff's promotion because, as noted by the BCNR, the delay allowed the Secretary of the Navy to make an informed decision to remove plaintiff from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list upon completion of the Command Investigation. Moreover, the promotion delay does not affect the court's resolution of plaintiff's claims because plaintiff failed to demonstrate an involuntary separation from the Navy, which is a necessary requirement to state a claim under the Military Pay Act, 37 U.S.C. § 204(a).

Plaintiff also has asserted claims for retroactive promotion, reinstatement to the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list, and to otherwise correct her records. As indicated above, plaintiff's complaint, however, raises only one claim for monetary damages, in Count One of her complaint, in which plaintiff seeks back pay for a violation of the Military Pay Act, 37 U.S.C. § 204. Plaintiff's remaining claims do not independently fall under the Military Pay Act, nor is any other money-mandating statute argued as a basis for jurisdiction in this court by plaintiff. The United States Court of Federal Claims has certain authority to grant equitable or declaratory relief when such relief is "incident of and collateral to" a judgment for monetary relief. See 28 U.S.C. § 1491(a)(2); see also Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716 (Fed. Cir. 1998) ("Although the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, see 28 U.S.C. §§ 1491(a)(2), (b)(2), there is no provision giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court.") (citing Katz v. Cisneros, 16 F.3d 1204, 1208 (Fed. Cir. 1994)).

Because the court has found that plaintiff's retirement was voluntary, plaintiff has failed to state a claim upon which relief can be granted under the Military Pay Act, the

only money-mandating statute relied on by plaintiff. Plaintiff's other claims for retroactive promotion, reinstatement to the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list, and to otherwise correct her records are not viable in this court independently. Therefore, in the absence of plaintiff's claim for monetary damages under the Military Pay Act, given plaintiff's voluntary retirement prior to reaching 28 years of active commissioned service, this court is without power to independently grant the other relief sought by plaintiff. Furthermore, defendant argues that, even if plaintiff could satisfy her burden of proving an involuntary separation, the court should dismiss plaintiff's claims because plaintiff is not entitled to a retroactive promotion and because the Navy's decision to detach her for cause is not justiciable. In Orloff v. Willoughby, the Supreme Court of the United States recognized that "[t]he military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." See Orloff v. Willoughby, 345 U.S. 83, 94 (1953) (alteration added). The Supreme Court in Orloff continued that:

> [T]he commissioning of officers in the Army is a matter of discretion within the province of the President as Commander in Chief. Whatever control courts have exerted over tenure or compensation under an appointment, they have never assumed by any process to control the appointing power either in civilian or military positions.

Id. at 90 (alteration added). Likewise, in Dysart v. United States, the United States Court of Appeals for the Federal Circuit stated that the United States Constitution requires "[t]hree separate actions" for a Naval officer's appointment: "the President's nomination, confirmation by the Senate, and the President's appointment after Senate confirmation." Dysart v. United States, 369 F.3d at 1306 (alteration added); see also 10 U.S.C. § 624(c) ("Appointments under this section shall be made by the President, by and with the advice and consent of the Senate[.]") (alteration added). In plaintiff's case, the Secretary of the Navy exercised his discretion to remove plaintiff from the FY 2017 Active-Duty Navy Captain Line (Information Warfare) promotion list on June 12, 2019. This court should not interfere with the Navy's decision to do so.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for failure to state a claim upon which relief can be granted is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED**.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**